Megan E. Jones (Cal. Bar No. 296274)
Seth R. Gassman (Cal. Bar No. 311702)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
mjones@hausfeld.com
sgassman@hausfeld.com

Will Thompson (CA Bar No. 289012)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wthompson@burnscharest.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P. S., a minor, by and through her Guardian, Cherise Slate, and M. T. W., a minor, by and through her Guardian, Brenda Washington, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>TIKTOK, INC., a corporation, and BYTEDANCE, INC., a corporation,<br><br>Defendant(s). | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT:**<br><br>**(1) Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, § 15**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

PARTIES .............................................................................................................................. 2

JURISDICTION AND VENUE ........................................................................................... 2

FACTUAL ALLEGATIONS ................................................................................................ 3

    A.    Biometric Information and BIPA ............................................................................ 3

    B.    The Evolution of TikTok. ....................................................................................... 4

    C.    Defendants have collected, captured, received, obtained, stored and/or used biometric identifiers and/or information in violation of Section 15(b) of BIPA. ................................................................................................................. 6

    D.    Defendants' failure to provide a written, publicly available policy regarding the retention and destruction of biometric information violated Section 15(a) of BIPA. ................................................................................................................. 9

    E.    Plaintiffs' Personal Experiences. ............................................................................ 9

CLASS ACTION ALLEGATIONS .................................................................................... 10

CAUSES OF ACTION ....................................................................................................... 13

    First Cause of Action ........................................................................................................ 13

PRAYER FOR RELIEF ..................................................................................................... 14

DEMAND FOR JURY TRIAL .......................................................................................... 15

Plaintiffs P. S., a minor, by and through her guardian Cherise Slate, and M. T. W., a minor, by and through her guardian Brenda Washington, on behalf of themselves and other similarly situated individuals, bring this Class Action Complaint against Defendants TikTok, Inc., ("TikTok") both individually and as a successor-in-interest to Musical.ly, Inc. ("musical.ly") and ByteDance, Inc., ("ByteDance") (collectively referred to herein as "Defendants") and allege as follows:

**INTRODUCTION**

1. TikTok, Inc. has created one of the most popular social media networking apps in the United States ("TikTok App" or the "App"). The App allows users to create, view, and share three to fifteen-second videos of dancing, lip-syncing, and other forms of self-expression, as well as short looping videos of three to sixty seconds.

2. The App's playful features belie Defendants' reliance on users' private, biometric information. The App scans a user's facial geometry before running an algorithm to determine the user's age. The App also uses facial scans to allow users to superimpose animated facial filters onto the moving faces of video subjects.

3. Defendants do not inform the App's users that their biometric data is being collected, captured, received, obtained, stored, and/or used by the App. Nor do Defendants disclose what they do with that data, who has access to that data, and whether, where, and for how long that data is stored.

4. By collecting, capturing, receiving, obtaining, storing and/or using facial scans without obtaining informed consent and by failing to make public their data use and retention policy, Defendants violate the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*

5. Plaintiffs bring this action individually and on behalf of proposed classes in order to enjoin Defendants' continued violation of BIPA and to recover statutory damages for Defendants' unauthorized collection, capture, receipt, storage, and/or use of biometric information belonging to TikTok App users in Illinois.

**PARTIES**

6. Plaintiff P. S., a minor, is and has been at all relevant times, a resident and citizen of the state of Illinois. P. S. brings this case by and through her guardian, Cherise Slate, a resident and citizen of the state of Illinois. P. S. began using TikTok in 2019.

7. Plaintiff M. T. W., a minor, is and has been at all relevant times, a resident and citizen of the state of Illinois. M. T. W. brings this case by and through her guardian, Brenda Washington, a resident and citizen of the state of Illinois. M. T. W. began using TikTok in 2018.

8. Defendant TikTok, Inc. is, and at all relevant times was, a California corporation with its principal place of business in Culver City, California. Defendant also maintains offices in Palo Alto and Mountain View, California.

9. TikTok, Inc. is sued in its individual capacity and as the successor-in-interest to Musical.ly, Inc., a California Corporation formerly headquartered in Palo Alto, California.

10. Defendant ByteDance, Inc. is, and at all relevant times was, a Delaware corporation with its principal place of business in Palo Alto, California.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") because (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse as all members of the proposed class, including Plaintiffs, are citizens of Illinois—a state different from Defendants' home states of California and Delaware; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The estimated number of Illinois TikTok users impacted by Defendants' conduct multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation) exceeds CAFA's $5,000,000 threshold.

12. This Court has personal jurisdiction over Defendants because (i) both Defendants' principal places of business are in the State of California, and Defendant TikTok, Inc. is incorporated in the State of California; and (ii) because the allegations in this Complaint arise from Defendants' misconduct occurring within this State.

13. In accordance with 28 U.S.C. § 1391, venue is proper in this District because: (i) Defendant ByteDance, Inc.'s principal place of business is in this District; and (ii) a substantial part of the conduct giving rise to Plaintiffs' claims occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

**A. Biometric Information and BIPA.**

14. In 2008, Illinois enacted BIPA in light of the "very serious need [for] protections for the citizens of Illinois when it comes to [their] biometric information."[1]

15. Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."[2]

16. To address this legitimate concern, Section 15(b) of BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.[3]

---

[1] 95th Ill. Gen. Assem. House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg), available at http://www.ilga.gov/house/transcripts/htrans95/09500276.pdf.

[2] 740 ILCS 14/5(c).

[3] 740 ILCS 14/15(b).

17. Section 15(a) of BIPA further provides that:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.[4]

18. For BIPA purposes, a "biometric identifier" is any personal feature that is unique to an individual and specifically includes scans of facial geometry.[5]

19. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."[6]

**B. The Evolution of TikTok.**

20. ByteDance Ltd., the parent of ByteDance, Inc., is a Beijing-based company founded in 2012 by Zhang Yiming.

21. ByteDance Ltd. first launched the TikTok App (originally called "A.me" in China but now called "Douyin") for the China market in September 2016. In 2016, the App was launched for iOS and Android in markets outside of China.

22. In November 2017, TikTok's parent company, ByteDance, spent up to $1 billion to purchase musical.ly, a startup based in Shanghai with an office in Santa Monica, California. Musical.ly was a social media video platform that, like the TikTok App, allowed users to create short lip-sync and comedy videos ("musical.ly App").[7]

---

[4] 740 ILCS 14/15(a).

[5] 740 ILCS 14/10.

[6] *Id.*

[7] Liza Lin & Rolfe Winkler, *Social Media App Musical.ly Is Acquired for as Much as $1 Billion*, Wall Street J. (Nov. 9, 2017 at 8:46 p.m.), https://www.wsj.com/articles/lip-syncing-app-musical-ly-is-acquired-for-as-much-as-1-billion-1510278123.

Page **4** of **16**
CLASS ACTION COMPLAINT

23. The musical.ly App was first launched in 2014, and, like the TikTok App, used facial scans to allow users to superimpose animated facial filters onto the moving faces of video subjects.[8]

24. In order to leverage musical.ly's young user base, TikTok merged the App with musical.ly on August 2, 2018 to create a larger video community, with existing accounts and data consolidated into one app, keeping the App title "TikTok." This ended musical.ly and made the TikTok App a world-wide app.

25. In the United States, the TikTok App is generally a young person's app. Sixty percent of active users are between the ages of 16 and 24,[9] and about seventy percent of ten-year-old girls with smartphones used the App at some point in 2019.[10]

26. The App has become one of the world's fastest-growing social media platforms and enjoys a massive American audience. It has been downloaded more than 1.3 billion times worldwide and more than 120 million times in the United States.

27. The App is the most downloaded non-game app in the world. On the Apple and Google app stores it routinely outranks competitors such as Facebook, Snapchat, and Instagram.

28. As of March 2019, the average user opened the App more than eight times per day and spent approximately 45 minutes on the App daily.

29. Defendants implemented an artificial intelligence tool in the App that automatically scans the faces of individuals in videos to estimate the subjects' ages.[11]

---

[8] Americanoize, *5 Great Musically Face Filters*, Medium (Nov. 16, 2017), https://medium.com/@americanoize/5-great-musically-face-filters-b88c41ea32c8.

[9] Greg Roumeliotis, et al., *Exclusive: U.S. Opens National Security Investigation Into TikTok – Sources* (Nov. 1, 2019 at 8:21 a.m.), https://www.reuters.com/article/us-tiktok-cfius-exclusive/exclusive-u-s-opens-national-security-investigation-into-tiktok-sources-idUSKBN1XB4IL.

[10] Georgia Wells & Yoree Koh, *TikTok Wants to Grow Up, but Finds It Tough to Keep Kids Out* (Feb. 16, 2020 at 8:00 a.m.), https://www.wsj.com/articles/tiktok-wants-to-grow-up-but-finds-it-tough-to-keep-kids-out-11581858006.

[11] *Id.*

30. The TikTok App, like the musical.ly App before it, also features a variety of popular face filters that users can superimpose onto a subject's moving face or even allow editing of certain facial features.[12]

31. To work, both of these tools require the scanning and/or mapping of a user's biologically unique facial geometry and/or facial landmarks.

32. Upon information and belief, TikTok, Inc. shared the biometric information it collected, captured, received, obtained, stored, and/or used from users of the App with other members of its corporate family during the Class period, including Defendant ByteDance, Inc.

33. As recently as August of 2018, the TikTok App's U.S. Privacy Policy stated: "We **will** also share your information with any member or affiliate of our group, in China…"[13] Even today, the TikTok App's U.S. Privacy Policy states: "We may share your information with a parent, subsidiary, or other affiliate of our corporate group."[14]

34. TikTok users are never told that Defendants collect, capture, receive, obtain, store, and/or use their biometric information. Similarly, users never gave consent for such use.

**C. Defendants have collected, captured, received, obtained, stored and/or used biometric identifiers and/or information in violation of Section 15(b) of BIPA.**

35. Defendants' use of Illinois TikTok App users' face scans, including, but not limited to, scans of facial geometry and/or facial landmarks, violates all three prongs of Section 15(b) of BIPA.

36. First, Defendants never informed TikTok users that they would collect, capture, receive, otherwise obtain, store, and/or use their face scans or any other biometric information.

---

[12] *Maxing out the beauty filter*, TikTok (last accessed April 28, 2020), https://www.tiktok.com/music/Maxing-out-the-beauty-filter-6705111720496614150.

[13] *Privacy Policy*, TikTok (last updated Aug. 2018), https://web.archive.org/web/20180829183230/http:/www.tiktok.com/i18n/privacy#how-share (emphasis added).

[14] *Privacy Policy*, TikTok (last updated Jan. 1, 2020), https://www.tiktok.com/legal/privacy-policy?lang=en.

Page **6** of **16**
CLASS ACTION COMPLAINT

37. None of the following words occur at all in the App's current U.S. Terms of Service (last updated February 2019) or Privacy Policy (last updated January 1, 2020): "biometric," "facial," "recognition," "face," "scan," "faceprint," "geometry," or "landmark."

38. Defendants' parent company, ByteDance, Ltd. knows how to inform users that it will collect facial landmarks and/or geometry. For example, the Privacy Policy of another ByteDance app, VigoVideo, explicitly states that the information the app collects and uses includes "your face landmarks or face contour for creation of face stickers."[15]

39. Similarly, the privacy policy of Douyin, the app ByteDance uses *inside* China and the progenitor of TikTok, states, "We may also use part of the facial feature value information . . . to provide you with the face sticker function to provide better visual effects."[16]

40. The U.S. TikTok App also allows users to add face stickers but fails to make the same disclosures. Moreover, the App also has a face tracker lens effect. With that, once the lens detects a user's face through biometrics, it will automatically zoom in.

41. Second, Defendants do not and have never informed TikTok App users of the specific purpose and length of time for which their face scans or other biometric information and identifiers are collected, captured, received, otherwise obtained, stored, and/or used.

42. In fact, the TikTok Privacy Policy for users over the age of thirteen residing in the United States does not disclose the length of time that *any* user content, much less biometric information, will be retained by Defendants.

43. Third, Defendants never received a written release or consent from TikTok App users or their legal authorized representatives before Defendants began collecting, capturing, receiving, otherwise obtaining, storing, and/or using the face scans or other biometric information.

---

[15] *Vigo-Privacy Policy*, VigoVideo (last updated Jan. 1, 2020), https://www.vigovideo.net/privacy_policy?vigo_lang=en.

[16] *Douyin Privacy Policy*, Douyin (last updated Feb. 13, 2020), https://www.douyin.com/agreements/?id=6773901168964798477 (translated using Google Translate).

Page **7** of **16**
CLASS ACTION COMPLAINT

44. Defendants' flagrant disregard for the privacy rights of the App's users comes as no surprise. In the few short years of the App's existence, Defendants have taken an evasive, often cavalier, approach to U.S. privacy laws. Defendants' violation of BIPA is part of this pattern of abuse.

45. For example, the App has been the subject of multiple lawsuits alleging violations of users' privacy. One recent lawsuit alleged that the App targeted minor children and collected their personal identifying information without parental consent. Another lawsuit alleged that data collected in the App was transferred to Defendants' corporate parent, ByteDance Ltd., headquartered in China.

46. In 2019, Defendant TikTok settled a claim brought by the Federal Trade Commission ("FTC"), which alleged that TikTok violated the Children's Online Privacy Protection Act. The $5.7 million settlement was, at that time, the largest penalty ever imposed for violations of children's privacy.[17] Two FTC commissioners went so far as to file a separate statement asserting that, in their view, TikTok's misconduct "reflected the company's willingness to pursue growth even at the expense of endangering children."[18]

47. Currently, the United States is investigating the App's collection of user data as a national security concern.[19] Describing the TikTok App as a cyber threat, the United States Army banned its use on government phones in late 2019, and the Navy soon followed suit.[20]

48. Defendants' readiness to sacrifice the privacy rights of the TikTok App's users is particularly troubling given their demographic makeup, which consists of many minor users.

---

[17] Patrick Thomas, *TikTok Settles with FTC Over Data Collection from Children*, Wall Street J. (Feb. 27, 2019 at 4:36 p.m.), https://www.wsj.com/articles/tiktok-settles-with-ftc-over-data-collection-from-children-11551303390?mod=article_inline.

[18] Farnoush Amiri, *TikTok to Pay $5.7 Million Over Alleged Violation of Child Privacy Law*, NBCNews (Feb. 27, 2019 at 12:55 PM), https://www.nbcnews.com/tech/tech-news/tiktok-pay-5-7-million-over-alleged-violation-child-privacy-n977186.

[19] Roumeliotis, et al., *supra* n.9.

[20] Brian Barrett, *Security News This Week: The Army Bans TikTok*, Wired (Jan. 4, 2020 at 9:00 a.m.), https://www.wired.com/story/army-bans-tiktok-cloud-hopper-email-scam/.

**D. Defendants' failure to provide a written, publicly available policy regarding the retention and destruction of biometric information violated Section 15(a) of BIPA.**

49. Defendants have also violated Section 15(a) of BIPA.

50. The TikTok App's U.S. Terms of Service and Privacy Policy do not set forth any information regarding retention of biometric information or guidelines for the destruction of such information.

51. Thus, in direct violation of Section 15(a), Defendants have not developed a written, publicly available policy establishing a retention schedule and guidelines for permanently destroying TikTok App users' biometric identifiers and biometric information.

**E. Plaintiffs' Personal Experiences.**

52. Plaintiff P. S. is a minor and a resident of Illinois who brings this action by and through her guardian, Cherise Slate, a resident of Illinois. P. S. has been a registered user of TikTok since at least 2019.

53. Since registering with TikTok, P. S. has uploaded and posted many videos to the App that include images of her face, and, upon information and belief, her face has appeared in other users' uploaded videos.

54. P. S. has also used facial filters in uploaded videos.

55. Plaintiff M. T. W. is a minor and a resident of Illinois who brings this action by and through her guardian, Brenda Washington, a resident of Illinois. M. T. W. has been a registered user of TikTok since at least 2018.

56. Since registering with TikTok, M. T. W. has uploaded and posted many videos to the App that include images of her face, and upon information and belief, her face has also appeared in other users' uploaded videos.

57. M. T. W. has also used facial filters in uploaded videos.

58. Defendants have collected, captured, received, otherwise obtained, stored, and/or used P.S.'s and M. T. W.'s face scans including, but not limited to, scans of their facial geometry and/or facial landmarks.

Page **9** of **16**
CLASS ACTION COMPLAINT

59. Neither P. S. and M. T. W., nor their legally authorized representatives, Cherise Slate and Brenda Washington, ever received notice that Defendants would collect, capture, receive, otherwise obtain, store, and/or use their face scans.

60. Defendants never informed P. S. or M. T. W. or their legally authorized representatives of the specific purpose and length of time for which their face scans or any other biometric information would be collected, captured, received, otherwise obtained, stored, and/or used.

61. Neither P. S. and M. T. W. nor their legally authorized representatives ever signed a written release authorizing Defendants to collect, capture, receive, otherwise obtain, store, and/or use their face scans or any other biometric information.

## CLASS ACTION ALLEGATIONS

62. Plaintiffs bring this lawsuit pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed class (the "Class"):

> Any user of the musical.ly App or the TikTok App who, while residing in Illinois, used face filters, face stickers, or the face tracker lens on an image or video of that user's own face or whose face appeared in a video uploaded to the musical.ly App and/or the TikTok App while the user resided in Illinois.

63. If additional information is obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

64. Specifically excluded from the Class are (i) Defendants; (ii) Defendants' officers, directors, agents, trustees, representatives, employees, principals, servants, partners, and joint-venturers; (iii) any entities controlled by Defendants; (iv) Defendants' heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants, their officers, or their directors; and (v) the judge assigned to this action and any member of that judge's immediate family.

65. *Ascertainability*. Members of the Class are readily ascertainable because the Class is defined using objective criteria, such as geography and the specific uses of the app, so as to allow prospective members to determine if they are part of the Class.

66. *Numerosity*. The Class is so numerous that individual joinder is impracticable. At a minimum, the Class contains tens of thousands of members. Although the precise number of Class members is unknown to Plaintiffs, the true number of members of the Class is known by Defendants.

67. *Commonality*. Common questions of law and fact exist and predominate over questions affecting only individual members of the Class. Such questions include:

    a. whether Defendants collected, captured, received, otherwise obtained, stored, and/or used biometric identifiers or biometric information from Plaintiffs and the members of the Class;

    b. whether Defendants informed Plaintiffs and the members of the Class that they would be collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric identifiers or biometric information;

    c. whether Defendants informed Plaintiffs and the members of the Class of the specific purpose and length of term for which their biometric identifiers or biometric information would be collected, captured, received, otherwise obtained, stored, and/or used;

    d. whether Defendants obtained a written release from Plaintiffs and the members of the Class authorizing Defendants to collect, capture, receive, otherwise obtain, store, and/or use their biometric identifiers and biometric information;

    e. whether Defendants used biometric identifiers and biometric information to identify Plaintiffs and the members of the Class;

    f. whether Defendants provided a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information;

      g. whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently;

      h. whether Plaintiffs and the members of the Class are entitled to statutory damages under BIPA and the correct measure of those damages; and

      i. whether Plaintiffs and the members of the Class are entitled to declaratory and injunctive relief.

68. ***Typicality***. Plaintiffs' claims are typical of those of the other members of the Class because, among other things, Defendants collected, captured, received, otherwise obtained, stored, and/or used their biometric information without informed consent in the exact same manner for each Class member.

69. ***Adequacy of Representation***. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel experienced in complex class actions and intend to vigorously prosecute this case on behalf of the Class. Further, Plaintiffs have no interests that are antagonistic to the Class.

70. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual member of the Class are relatively small compared to the burden and expense required to litigate a BIPA claim against Defendants. It would thus be impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.

71. Individualized litigation also risks inconsistent or contradictory judgments and increases the cost of legal resolution of this matter for all parties and for the court system. By contrast, the proposed class action presents far fewer management difficulties and offers the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### First Cause of Action

### Violations of 740 ILCS 14/1, *et seq.*

### (On Behalf of Plaintiffs and the Class)

72. Plaintiffs, individually and on behalf of the Class, incorporate the foregoing allegations as if fully set forth herein.

73. Defendants are "private entities" as defined by 740 ILCS 14/10.

74. Plaintiffs and the other members of the Class are individuals who had their biometric information collected, captured, received, obtained, stored, and/or used by Defendants through the TikTok App's collection and use of their biometric identifiers.

75. Defendants systematically collected, captured, received, otherwise obtained, stored, and/or used Plaintiffs' and the other Class members' biometric identifiers and information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

76. Defendants failed to inform Plaintiffs or the other members of the Class in writing that their biometric identifiers and biometric information were being collected, captured, received, otherwise obtained, stored, and/or used on the App. Defendants also failed to inform Plaintiffs or the other members of the Class in writing of the specific purpose and length of term for which their biometric identifiers and biometric information were being collected, captured, received, otherwise obtained, stored, and/or used as required by 740 ILCS 14/15(b)(1)–(2).

77. Additionally, Defendants possess the biometric identifiers or information of Plaintiffs and other members of the Class but do not publicly provide a retention schedule or guidelines for permanently destroying such identifiers or information, as required by 740 ILCS 14/15(a).

78. By collecting, capturing, receiving, otherwise obtaining, storing, and/or using Plaintiffs' and the other Class members' biometric identifiers and biometric information, Defendants violated the right of each Plaintiff and Class member to keep private these biometric identifiers and biometric information.

79. These privacy violations harmed Plaintiffs and the other members of the Class.

80. Upon information and belief, Defendants' violations of 740 ILCS 14/15(a) and (b) were intentional or reckless because Defendants deliberately designed and implemented the artificial intelligence tools and facial filters in the App that collect, capture, receive, otherwise obtain, store, and/or use biometric identifiers and biometric information.[21]

81. Alternatively, Defendants' BIPA violations were negligent because Defendants breached the applicable standard of care by failing to ensure that TikTok App users were informed of and consented to Defendants' collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric information and biometric identifiers.

82. Individually and on behalf of the members of the proposed Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the members of the Class by requiring Defendants to comply with BIPA's requirements for collecting, capturing, receiving, otherwise obtaining, storing, and/or using biometric identifiers and biometric information; (2) statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, alternatively, statutory damages of $1,000 for each negligent violation pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf all others similarly situated, pray for a judgment against Defendants as follows:

1. An order certifying the Class as defined above, appointing Plaintiffs as Class Representatives, and appointing Burns Charest LLP and Hausfeld LLP as Class Counsel;

2. Declaring that Defendants' actions, as alleged above, violate section 15(a)–(b) of BIPA, 740 ILCS 14/1 *et seq.*;

3. Awarding statutory damages of $5,000 for each intentional or reckless violation of

---

[21] Wells & Koh, *supra* n.10.

Page **14** of **16**

**CLASS ACTION COMPLAINT**

1. BIPA pursuant to 740 ILCS 14/20(2) or, alternatively, statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

4. Awarding injunctive and equitable relief pursuant to 740 ILCS 14/20(4) requiring Defendants to comply with BIPA by providing a publicly available retention schedule or guidelines for permanently destroying the TikTok app users' biometric identifiers and biometric information and forcing Defendants to stop collecting, capturing, receiving, otherwise obtaining, storing, and/or using the biometric identifiers and biometric information of Plaintiffs and the members of the Class without first obtaining their informed written consent;

5. Awarding Plaintiffs attorneys' fees and costs pursuant to 740 ILCS 14/20(3);

6. Awarding prejudgment and post-judgment interest as provided by law; and

7. Awarding any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf all others similarly situated, hereby demand a jury trial on all issues so triable.

Dated: April 30, 2020

Respectfully submitted,

/s/ Megan E. Jones

Megan E. Jones (Cal. Bar No. 296274)
Seth R. Gassman (Cal. Bar No. 311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
mjones@hausfeld.com
sgassman@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
(*pro hac vices* to be submitted)

Page **15** of **16**

CLASS ACTION COMPLAINT

Will Thompson (Cal. Bar No. 289012)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wthompson@burnscharest.com

Warren T. Burns
Daniel Charest
Russell Herman
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com
rherman@burnscharest.com
(*pro hac vices* to be submitted)

Korey A. Nelson
Amanda K. Klevorn
Patrick Murphree
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiaa 70115
Telephone: (504) 779-2845
knelson@burnscharest.com
aklevorn@burnscharest.com
pmurphree@burnscharest.com
(*pro hac vices* to be submitted)

Jason M. Baer
Casey C. Dereus
Joshua A. Stein
**BAER LAW, LLC**
3000 Kingman Street, Suite 200
Metairie, LA 70006
Telephone: (504) 372-0111
jbaer@baerlawllc.com
cdereus@baerlawllc.com
jstein@baerlawllc.com
(*pro hac vices* to be submitted)

*Counsel for Plaintiffs*

Page **16** of **16**

**CLASS ACTION COMPLAINT**